IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

REBECCA J. B.,[1] )
)
       Plaintiff, )
)
vs. ) Civil No. 18-cv-1138-CJP[2]
)
COMMISSIONER OF SOCIAL )
SECURITY, )
)
       Defendant. )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in May 2014, alleging disability beginning on November 27, 2011. After holding an evidentiary hearing, ALJ Carol L. Boorady denied the application on May 12, 2017. (Tr. 17-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 9.

1

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. Whether the ALJ erred by failing to account for moderate deficits of concentration, persistence, or pace in the residual functional capacity finding;

2. Whether the ALJ erred in failing to identify and reconcile apparent conflicts between the VE's testimony and the *Dictionary of Occupational Titles* (DOT); and

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at

step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.... If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while

4

judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Boorady followed the five-step analytical framework described above. She determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. She was insured for DIB through December 31, 2016. The ALJ found that plaintiff had severe impairments of fibromyalgia, lumbar degenerative disc disease, COPD, obesity, bipolar disorder, and anxiety disorder. She further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to do light work, with the following limitations:

> she requires a sit/stand option allowing for a change in position every 30 to 60 minutes for a few minutes at a time while remaining at the work station with no loss of production. She is able to understand, remember, and carry out simple, routine instructions consistent with unskilled work. She can tolerate occasional interaction with coworkers and supervisors but in small numbers and for short periods of time. She cannot perform tandem tasks. She can perform work that is done relatively independently with no interaction with the general public.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work as a cashier or nurse's aide. However, she was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the Court will omit a discussion of the medical treatment.

1. **Agency Forms**

Plaintiff was born in 1974 and was 37 years old on the alleged date of onset. A prior application had been denied as of May 2000. (Tr. 314). She stopped working the day before the alleged date of onset. (Tr. 318). She had worked as a cashier and a certified nurse's aide. (Tr. 320).

2. **State Agency Consultants' Assessments**

In October 2014, acting as a state agency consultant, Donald Henson, Ph.D., assessed plaintiff's mental RFC based on a review of the file contents. He used electronic versions of the agency forms that are commonly used for this purpose, the Psychiatric Review Technique Form and the Mental RFC Assessment Form. (Tr. 141-142, 144-145). On the PRT Form, he indicated that plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the Mental RFC form, he answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" He rated plaintiff as "moderately limited" in ability to carry out detailed instructions and in ability to perform activities within a schedule, maintain regular attendance, and be punctual. He also rated plaintiff as moderately limited in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods. Dr. Henson also answered "yes" to the question "Does the individual have social interaction limitations?" He rated plaintiff as "moderately limited" in ability to interact appropriately with the public.

In the sections for "narrative discussion" under each of the above areas, Dr. Henson wrote "see below." This apparently refers to the last area of the form, entitled "MRFC-Additional Explanation." Here, Dr. Henson wrote, "[She] has essentially intact cognitive and attentional abilities suggestion that she retains the ability to perform simple routine activities which are within the limits of her physical capabilities and have limited involvement with the general public."

In April 2015, a second state agency consultant, David L. Biscardi, Ph.D., completed the same forms. (Tr. 170-171, 173-175). His findings on the PRT Form were the same as Dr. Henson's. On the MRFC Form, in addition to the moderate limitations found by Dr. Henson, he indicated that plaintiff had moderate limitations in ability to work in coordination with or in proximity to others without being distracted by them, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get along with coworkers or peers, and ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. He found that she had a marked limitation in ability to interact appropriately with the public. He also found that she had moderate limitations in ability to respond to changes and ability to set realistic goals or make plans.

In narrative remarks at the end of the form, Dr. Biscardi wrote that plaintiff "retains the capacity to understand, remember, carry out and sustain performance

of 1-3 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, interact briefly/superficially with coworkers/supervisors with no public contact, and adapt to changes/stressors associated with simple routine competitive work activities."

### 3. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in April 2017. (Tr. 100).

Plaintiff testified regarding her symptoms, medical treatment, and daily activities. (Tr. 104-121).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which corresponded to the RFC assessment. The VE testified that a person with this RFC could not do plaintiff's past work. She identified three jobs at the light exertional level that could be done by a person with plaintiff's RFC: printer, folder, and office worker.[4] The ALJ asked whether her testimony was "consistent with the Dictionary of Occupational Titles." She answered "Well, it is. Sit/stand is not addressed in the DOT. The reason I answered as I did was I based my answer on a combination of my training and experience." (Tr. 130-132).

The VE testified that employers usually tolerate a worker missing only one day of work a month. (Tr. 133).

Plaintiff's counsel did not ask any questions of the VE or identify any conflict with the DOT.

---

[4] The transcript says the first job was "printer." The ALJ's decision says the first job was "pricer," referring to the same DOT number cited by the VE at the hearing, 229.587-018. The DOT calls that job a "ticketer." See, 1991 WL 672150.

**Analysis**

Plaintiff's second argument can be swiftly disposed of.

She argues that ALJ failed to sufficiently identify and reconcile conflicts between the VE's testimony and the DOT. She contends that the VE's testimony conflicted with information in the DOT because the hypothetical question included social limitations that are not addressed by the DOT. Doc. 13, p. 14.

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform her past work, the Commissioner bears the burden of showing that she is capable of performing other jobs that exist in significant numbers in the economy.

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy.[5] An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

For each job title, the DOT specifies whether certain physical and mental

---

[5]The agency is developing a replacement for the DOT, referred to as the "Occupational Information System." This system will be the "primary source of occupational information SSA staff use in our disability adjudication process." This system is projected to be implemented in 2020. https://www.ssa.gov/disabilityresearch/occupational_info_systems.html, visited on February 28, 2019.

activities are required, and, if so, the frequency with which they are required. The DOT does not, of course, speak to every possible aspect of the job title.

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT; if so, the ALJ must resolve those conflicts. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). The ALJ asked the VE about conflicts, and none were identified.

Plaintiff argues that there was a conflict because the VE testified about limitations that are not addressed in the DOT. Plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT at the evidentiary hearing.[6] Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)[emphasis in original].

Defendant argues that there is no conflict at all where the VE testifies about subjects not addressed in the DOT, citing *Collins v. Berryhill*, 743 F. App'x 21 (7th Cir. 2018), reh'g denied (Sept. 24, 2018). The Court agrees. Although *Collins* is nonprecedential, its reasoning is persuasive. The Seventh Circuit found that there was a conflict where the VE testified about a topic addressed in the DOT (exertional level), but there was not a conflict where the DOT was silent (sit/stand option). *Collins*, 743 F. App'x at 25-26. See also, *Zblewski v. Astrue*, 302 F. App'x 488 (7th

---

[6] Plaintiff is represented by a different attorney in this Court.

Cir. 2008). Plaintiff has not identified any conflict, much less an apparent one.

Plaintiff's first argument fares better. Plaintiff argues that the RFC assessment was erroneous because it failed to account for her moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. She noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental functional analysis." (Tr. 22-23).

The ALJ gave "great weight" to the state agency reviewers' findings that plaintiff has "moderate mental symptoms." She went on to say that "The objective mental status examination findings support that the claimant has difficulty concentrating, as she has a history of suicidal ideation and paranoia." (Tr. 27).

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018).

Just last month, the Seventh Circuit issued two more decisions in this line of cases.

In *Winsted v. Berryhill*, 915 F.3d 466 (7th Cir. Feb. 8, 2019), the Court stated, "Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations. [Citations omitted.] We have also made clear that in most cases 'employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's

limitations in this area." *Winsted*, 915 F.3d at 471.

In *Winsted*, at step three, the ALJ found that the plaintiff had moderate difficulty with social functioning and concentration, persistence, and pace. The RFC assessment limited plaintiff to "simple, routine, repetitive tasks with few workplace changes, no team work, and no interaction with the public." *Winsted*, 915 F.3d at 470. The Court held that the hypothetical question based on that RFC assessment was erroneous because it "did not direct the expert to consider problems with concentration, persistence, and pace, which is the hypothetical the ALJ relied on for the RFC. Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted*, 915 F.3d at 471 (emphasis in original).

On February 26, 2019, the Seventh Circuit issued its decision in *DeCamp v. Berryhill*, __ F.3d __, 2019 WL 923692 (7th Cir. Feb. 26, 2019). Like this case, state agency reviewers found that the plaintiff had moderate limitations in maintaining concentration, persistence, or pace; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. At step three, the ALJ found that the plaintiff had moderate limitations in concentration, persistence, or pace. The ALJ limited the plaintiff to "unskilled work with an SVP

13

of 2 or less, with no fast-paced production line or tandem tasks, at a job that allows her to be off task up to 10% of the workday." *DeCamp*, 2019 WL 923692, at *2-3.

The Seventh Circuit held:

> We agree that the ALJ erred by not including DeCamp's "moderate" limitations in concentration, persistence, and pace in the hypothetical question to the vocational expert. The ALJ's hypothetical to the vocational expert omitted any mention of DeCamp's moderate limitations in the four areas identified by [state agency examiner] Dr. Pape (whose opinion the ALJ cited to support her finding): maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace. The ALJ opted instead to limit DeCamp to "unskilled work" with no "fast-paced production line or tandem tasks." We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace.

*DeCamp*, 2019 WL 923692, at *4.

Here, consistent with the opinions of the state agency reviewers, the ALJ accepted that plaintiff has moderate limitations in maintaining concentration, persistence, or pace. The Commissioner overlooks this fact in her brief, arguing instead that the ALJ was justified in relying on the narrative explanation given in the state agency consultants' reports. Further, she argues, "Though she insists that the ALJ's RFC was deficient and failed to accommodate her moderate limitation in maintaining concentration, persistence, or pace, she fails to identify any additional restrictions that the ALJ should have included but improperly omitted." Doc. 19, p. 12. The Commissioner fails to address the central point here, which is that the ALJ found that plaintiff has moderate limitations in maintaining concentration,

persistence, or pace, but failed to include that limitation in the RFC assessment and the hypothetical question.

The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Further, the ALJ cannot simply ignore the consultant's answers to the questions in the PRT Form and the first part of the mental RFC Assessment Form. "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). The Commissioner argues that Dr. Biscardi said in his narrative remarks that plaintiff could complete a normal workday. Doc. 19, p. 14. However, the ALJ failed to resolve the obvious contradiction between that statement and the findings of both state agency reviewers that plaintiff is moderately limited in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. These two areas of functioning are grouped under the area of "sustained concentration and persistence limitations" in the Mental RFC Assessment Form. See, Tr. 144.

The ALJ wrote, "Due to her combined mental symptoms, including anxiety and difficulty concentrating, she should have no interaction with the general

public." (Tr. 27). However, there is no medical evidence that such a limitation adequately addresses concentration difficulties.

The ALJ's error requires remand. "If a decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: March 1, 2019.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**